# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| ROBERTO VALENZUELA SILVA, | ) |
| Movant, | ) |
| v. | ) No. 4:12-cv-0898-DGK |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

## ORDER DENYING MOTION FOR POSTCONVICTION RELIEF AND CERTIFICATE OF APPEALABILITY

This motion arises out of Movant Roberto Silva's ("Movant" or "Silva") conviction for conspiracy to distribute 100 kilograms or more of marijuana. After pleading guilty pursuant to a written plea agreement, the Court sentenced Movant to 135 months in prison, a sentence at the low end of the guideline range.

Pending before the Court is Silva's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence" (Doc. 1). Silva contends the Court should vacate his conviction and guilty plea because his attorney provided ineffective assistance of counsel by convincing Silva to plead guilty and give up his right to a jury trial. Silva claims his attorney induced him to plead guilty by showing him a written, binding plea offer from the Government to serve 63 to 78 months imprisonment in return for pleading guilty, and by advising him that he would serve only 63 to 78 months. Both the Government and defense counsel deny any such deal was ever contemplated.

The Court finds an evidentiary hearing is unnecessary and the motion should be denied because defense counsel did not provide ineffective assistance of counsel. The Court also declines to issue a certificate of appealability.

## Procedural History

The following summary of the procedural history in the underlying criminal case draws heavily from the Government's Suggestions in Opposition (Doc. 8).

On September 9, 2009, a grand jury handed up a superseding indictment charging Silva and others with (1) conspiracy to distribute 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846; and (2) aiding and abetting the possession with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2.

Multiple attorneys defended Silva against these charges. After the Court appointed Phillip Gibson to represent Silva, Silva retained Patrick Berrigan. On February 10, 2010, Mr. Berrigan withdrew and Silva retained Gregory Abella, who negotiated the plea agreement in this case. On November 10, 2010, Mr. Abella withdrew and Phillip Gibson again became Silva's counsel.

While represented by Mr. Abella, Silva entered into a written, non-binding plea agreement with the Government. On August 3, 2010, Silva plead guilty pursuant to that written plea agreement. Under the agreement, Silva plead guilty to a lesser included offense in Count One of the indictment, conspiracy to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846. The statutory minimum for this offense was five years rather than 10 years (Plea Tr. 10-12).

The plea agreement advised Silva of the correct statutory range of punishment for the offense, between 5 and 40 years' imprisonment (Plea Agrmt. 5). The agreement advised Silva that dismissed conduct could be used to determine his applicable Sentencing Guidelines range; that the Court would determine the applicable Guidelines range; that the Court could impose any sentence authorized by law, including a sentence outside the Guidelines range; and the Court was

not bound by any recommendation regarding the sentence (Plea Agrmt. 4, 5-6). Silva acknowledged and agreed that the Sentencing Guidelines are advisory and not binding on the Court (Plea Agrmt. 8). The parties estimated that the base offense level would not be less than level 26, and deferred to the sentencing hearing argument regarding the calculation of the base offense level, any aggravating and mitigating factors, and the calculation of the criminal history category (Plea Agrmt. 8-9). The Government agreed to not seek a sentence above the Sentencing Guidelines range (Plea Agrmt. 9).

During the change of plea hearing, Silva acknowledged he was in good physical and mental condition (Plea Tr. 6). Defense counsel stated he went over the plea agreement with Silva both in English and in Spanish (Plea Tr. 7). Silva stated he had communicated well with both defense counsel, Mr. Abella and co-counsel Daniel Zarate, and he was satisfied with their representation (Plea Tr. 8-9). Silva confirmed that he had sufficient time to consult counsel regarding the plea and defenses, that it was his decision to plead guilty, and that no one else had made that decision for him (Plea Tr. 9-10). Silva acknowledged understanding the statutory range of punishment (Plea Tr. 11-12). He also acknowledged that the Court, and not defense counsel, would calculate the advisory Sentencing Guidelines range, and that the Court was not bound to follow the Guidelines (Plea Tr. 12-13). Silva stated he understood that the Court could sentence him to any sentence within the statutory range of punishment (Plea Tr. 13). The Court also advised, and Silva acknowledged, that any estimates regarding the Sentencing Guidelines calculations were only estimates, and that no one would know the sentence until later (Plea Tr. 13). Silva stated he understood the plea agreement and had no questions (Plea Tr. 13-15). Silva also agreed that "other than this plea agreement" no promises, threats, or coercion had been used to cause him to plead guilty (Plea Tr. 15).

The Court then advised Silva of the rights he would forfeit by pleading guilty (Plea Tr. 16-18). The Court engaged in a colloquy with Silva as it advised him of the constitutional rights he was waiving. During this colloquy Silva made clear that he understood these rights included the right to trial (including the right to cross-examine and present witnesses); the right to be found guilty by a jury; and the right to appeal or collaterally attack his conviction, except in the case of ineffective assistance of counsel. The plea agreement also contained written provisions advising Silva that by pleading guilty he was waiving these constitutional rights (Plea Agrmt. 11-12). Silva then made a factual basis for the plea (Plea Tr. 19-21). The Court accepted Silva's guilty plea (Plea Tr. 21).

In November 2010, Mr. Abella withdrew and Phillip Gibson began representing Silva in preparation for the sentencing hearing. On January 25, 2011, the final presentence investigation report (PSR) was issued. The PSR calculated a drug amount of 2,722 kilograms of marijuana, resulting in a base offense level of 32 under U.S.S.G. § 2D1.1 (PSR ¶¶ 16-89, 94). The Court assessed a three-level increase for Silva's leadership role and a three-level reduction for acceptance of responsibility resulting in a total offense level of 32 (PSR ¶¶ 95-104). The Court also assessed three criminal history points, resulting in a criminal history category of II (PSR ¶¶ 105-13). This yielded an advisory Sentencing Guidelines range of 135 to 168 months imprisonment, with a statutory mandatory minimum sentence of 60 months imprisonment (PSR ¶¶ 133-34).

On June 7, 2011, Silva appeared for sentencing with Mr. Gibson as counsel. Mr. Gibson noted he had not negotiated the plea agreement, and that Silva was not satisfied with the plea agreement previously negotiated by Mr. Abella (Sent. Tr. 4). Mr. Gibson noted, however, that he and Silva had made a strategic chose not to move to withdraw the guilty plea for fear of losing the three-level reduction for acceptance of responsibility (Sent. Tr. 4-5). Silva formally objected

4

to the leadership role enhancement and noted that he intended to raise that issue in a § 2255 motion directed at Mr. Abella because "those issues could have been worked out prior to that time." (Sent. Tr. 5).

The Government noted that it had agreed with Mr. Abella, and now with Mr. Gibson, to permit Silva to argue for a sentence outside the Sentencing Guidelines range, despite the argument being foreclosed by the plea agreement (Sent. Tr. 6-7). The Government argued that the Guidelines range was accurate and requested a sentence within that range (Sent. Tr. 7-9). Defense counsel stated that Silva agreed with the drug quantities but continued to object to the three-level leadership enhancement.

The Court agreed with the parties that a sentence at the low end of the Guidelines range was appropriate and sentenced Silva to 135 months' imprisonment (Sent. Tr. 13).

Silva subsequently filed a notice of appeal and then dismissed the appeal. He has timely filed the present 2255 motion to vacate his conviction.

## DISCUSSION

Movant raises a single claim of ineffective assistance of counsel. He contends Mr. Abella provided ineffective assistance of counsel during the plea negotiation process by (1) allegedly showing him a written plea agreement in which the government allegedly agreed to give him 63 to 78 months imprisonment, and (2) advising him that the Court would sentence him to 63 to 78 months imprisonment. Movant claims that had Mr. Abella properly advised him, he would have insisted on a jury trial. Movant requests the Court vacate his conviction and require the Government to offer a binding plea agreement of 63 to 78 months. In the alternative, he requests an evidentiary hearing to prove his claim and expand the record.

**A.     Movant's claim of ineffective assistance during plea negotiations is meritless.**

To succeed on a claim of ineffective assistance of counsel, a movant must show that "(1) trial counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney, and (2) trial counsel's deficient performance prejudiced the defense." *Armstrong v. Kemna*, 534 F.3d 857, 863 (8th Cir. 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984)). Thus, the analysis contains two prongs, a performance prong and a prejudice prong. Failure to satisfy either prong is fatal to the claim, and the court need not reach the performance prong if the defendant suffered no prejudice from the alleged ineffectiveness. *See Pryor v. Norris*, 103 F.3d 710, 713 (8th Cir. 1997).

To establish prejudice, a movant must show that the outcome would have been different had counsel's performance not been deficient. If the movant cannot show a reasonable probability that the outcome would have been different, he cannot show prejudice. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000).

Judicial review of trial counsel's performance is highly deferential, "indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Middleton v. Roper*, 455 F.3d 838, 846 (8th Cir. 2006). Trial counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Strategic choices made in the shadow of a lack of preparation or investigation, however, are not protected by the same presumption. *Armstrong*, 534 F.3d at 864.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To establish such a claim, the

6
Case 4:12-cv-00898-DGK   Document 11   Filed 04/16/13   Page 6 of 9

movant must prove that the alleged plea agreement was formally offered by the Government. *Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000).

In the present case, Silva has failed to demonstrate that the Government ever offered a binding plea agreement for 63 to 78 months imprisonment, or that Mr. Abella even represented that such a deal was available. On the contrary, the record conclusively establishes otherwise. Mr. Abella has provided an affidavit stating that the only plea agreement that was shown to Silva was the one Silva ultimately signed which did not contain an agreed upon sentence. This is corroborated by Silva's own testimony during the change of plea hearing when he testified that no other promises or agreements had been made to him to induce him to plead guilty. It is also consistent with Silva's acknowledgment at the hearing that any estimates regarding his sentence were not binding on the Court, and that the Court would determine his sentence. The Government has also indicated that it never proposed such a plea agreement, not would it have entered into such an agreement in this case.

Additionally, defense counsel's failure to accurately predict a sentence is not ineffective assistance of counsel. Inaccurate advice about a likely sentence does not render a defendant's decision to plead guilty involuntary, so long as the defendant is informed of the statutory minimum and maximum, and the court's ability to sentence in that range. *United States v. Quiroga*, 554 F.3d 1155-56 (8th Cir. 2009). Here both the plea agreement and the Court informed Movant of the statutory minimum and maximum and cautioned him that the Court could sentence him anywhere in that range.

Consequently, there is no merit to Movant's ineffective assistance of counsel claim.

**B.     No evidentiary hearing is required.**

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief."

*Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted). "No hearing is required, however, 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'" *Id*. (quoting *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007)); *see also Sanders v. United States*, 347 F.3d 720, 721 (8th Cir. 2003) (holding a § 2255 motion may be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle him to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact).

As discussed above, Movant's claims are conclusively contradicted by the record. Consequently, no evidentiary hearing is required or will be held.

**C.     No certificate of appealability should be issued.**

In order to appeal an adverse decision on a § 2255 motion, a movant must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B). District courts customarily address this issue contemporaneously with the order on the motion. *See Pulliam v. United States*, No. 10-3449-CV-S-ODS, 2011 WL 6339840, at *4 (W.D. Mo. Dec. 16, 2011).

A certificate of appealability should be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires the movant to demonstrate "that reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 464 U.S. 800, 893 n.4 (1983)). In the present case, the Court holds no reasonable jurist would grant this § 2255 motion, and so the Court declines to issue a certificate of appealability.

## Conclusion

For the reasons discussed above, the motion (Doc. 1) is DENIED and the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Date:  April 16, 2013  /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT